**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**HERBERT BUTLER (#124959)**                                              **CIVIL ACTION**

**VERSUS**

                                                                         **25-232-SDD-SDJ**

**CHUCK TILLIS, ET AL.**

<u>**NOTICE**</u>

   Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

   In accordance with 28 U.S.C. § 636(b)(1), you have **14 days** after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within **14 days** after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

   **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

   Signed in Baton Rouge, Louisiana, on April 20, 2026.

                       _____

                        **SCOTT D. JOHNSON**
                        **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

HERBERT BUTLER (#124959)                          CIVIL ACTION

VERSUS

                                                 25-232-SDD-SDJ

CHUCK TILLIS, ET AL.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on Defendants' Motion to Dismiss (R. Doc. 16). The Motion is opposed. *See* R. Doc. 18.

The *pro se* Plaintiff, an inmate incarcerated at Louisiana State Penitentiary, filed this proceeding pursuant to 42 U.S.C. § 1983, complaining that his constitutional rights were violated in connection with a parole proceeding. He seeks monetary, declaratory, and injunctive relief.

### Official Capacity Claims

Defendants first seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of Plaintiff's § 1983 claims against them in their official capacities. To the extent Plaintiff may be asserting a § 1983 claim for monetary damages against the individual Defendants in their official capacities, § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. The same applies to the state and state agencies. *Will*

*v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 71 (1989); *Lumpkins v. Office of Cmty. Dev.*, 621 F. App'x. 264, 268 (5th Cir. 2015); *Bishop v. State Bar of Texas*, 791 F.2d 435, 438 (5th Cir. 1986). Accordingly, to the extent Plaintiff may be asserting a § 1983 claim for monetary damages against the individual Defendants in their official capacities, the State, and the Board of Pardons and Parole, any such claims are subject to dismissal.

**Failure to State a Claim**

Defendants next assert that Plaintiff has failed to state a claim upon which relief may be granted. On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id*. (citation omitted). Notwithstanding this less stringent standard, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

**Plaintiff's Allegations**

In his Complaint, as amended, Plaintiff alleges the following: Plaintiff was convicted of second-degree murder and began serving a life sentence in 1988. On November 16, 2023, Plaintiff's sentence was commuted to 99 years with the possibility of parole, retroactive to August 1, 2021. When Plaintiff went before the Parole Board on February 5, 2025, instead of applying the law in place when Plaintiff first became eligible for parole, the Board applied the version of Louisiana Revised Statute 15:574.2(C)(2) that became effective on April 29, 2024. The new law requires a unanimous vote. The old law required a majority vote. On February 5, 2025, Plaintiff

received a majority vote in favor of parole. Had the new law not been applied, Plaintiff would have been released on parole.

**Violation of the Ex Post Facto Clause**

On August 1, 2021, the date Plaintiff alleges he became eligible for parole, Louisiana Revised Statute 15:574(C)(2) read, in part, as follows, "Except in cases where the offender is released pursuant to Paragraph (4) of this Subsection, the committee may grant parole with two votes of a three-member panel, or, if the number exceeds a three-member panel, a majority vote of those present…" On February 5, 2025, the date Plaintiff went before the Parole Board, the statute provided, in part, as follows: "Except as provided in Paragraph (3) of this Subsection, three votes of a three-member panel shall be required to grant parole or, if the number of members of the panel exceeds three, a unanimous vote of those present shall be required to grant parole…" As such, the required vote changed from a majority to unanimous.

Under the Ex Post Facto Clause, "[l]egislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood,* 497 U.S. 37, 43 (1990) (citing *Beazell v. Ohio,* 269 U.S. 167, 169–70 (1925)). A statute violates the Ex Post Facto Clause only if it retroactively "effects [a] change in the definition of respondent's crime" or "increases the 'punishment' attached to respondent's crime." *Cal. Dep't of Corr. v. Morales,* 514 U.S. 499, 505 (1995).

In general, rule changes on the suitability of parole do not violate the Ex Post Facto Clause, while rules affecting eligibility for parole may violate the clause. Parole boards vote on suitability for parole, not eligibility, thus a change in the number of votes required pertains to suitability for parole and does not implicate a violation of the Ex Post Facto Clause unless it presents a significant risk of increased confinement. *Wallace v. Quarterman*, 516 F.3d 351 (5th Cir. 2008).

In *Wallace*, the Court held that, while a supermajority requirement "does not alone show a significant risk of increased confinement, a court must look to the specific facts of the case, if a claimant has presented such facts, to determine whether a new law produces a 'sufficient risk' of increased confinement." *Wallace,* 516 F.3d at 356. Quoting the Supreme Court's holding in *Garner*, the Court held:

> When the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule.

In *Kyles v. Davis*, 734 F. App'x. 912 (5th Cir. 2018), Kyles pointed to the two members of the seven-member Parole Board who favored his parole. He argued that if those two members had been on a three-member panel selected under the old procedure, then he would have had enough votes for parole. Finding Kyles' argument to be speculative, the Court noted, "The problem is the "if." Kyles cannot show that a randomly selected three-member panel would have included the two members who voted in his favor." *Id.* at 913.

The instant case differs from *Kyles* in that Plaintiff here had a three-member panel, and two of those members voted in favor of parole. As such, there is no speculation as there was in *Kyles.* It is not the case where any seven of the Parole Board members could have been chosen. Three out of seven members were chosen to form a panel. Two of the members of that three-member panel voted in favor of parole. As such, under the old law Plaintiff would have been released on parole. As such, Plaintiff can show that the retroactive application of La. R.S. 15:574(C)(2) resulted in a longer period of incarceration than under the earlier rule.

### Failure to Exhaust

Defendants next assert that Plaintiff's claim should be dismissed due to his failure to exhaust state court remedies. In this regard, Defendants are correct. Plaintiff herein is seeking "to

be immediately released from prison." Plaintiff's claims call into question the validity of his confinement; therefore, this claim is subject to dismissal because it may only be pursued in a habeas corpus proceeding. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of *habeas corpus*").

Although this Court may construe a plaintiff's §1983 action as a habeas petition, it cannot be done when the plaintiff has failed to exhaust his state remedies. *Walker v. Miss. Parole Bd.*, 333 F. App'x. 843, 844 (5th Cir. 2009) ("The district court properly declined to construe Walker's complaint as a habeas petition because Walker failed to exhaust his state remedies."). Research did not reveal any recent Louisiana Supreme Court decisions involving Plaintiff. As such, it appears that Plaintiff never exhausted his claim through the state's highest court, as would be required to exhaust remedies.

### *Supplemental Jurisdiction*

To the extent that Plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this Court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended that Plaintiff's federal claims be dismissed, the Court further recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is the recommendation of the Magistrate Judge that the exercise of supplemental jurisdiction be declined. It is further recommended that Defendants' Motion to Dismiss (R. Doc. 16) be granted, dismissing Plaintiff's claims without prejudice for failure to exhaust state court remedies.

Signed in Baton Rouge, Louisiana, on April 20, 2026.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**